# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | No. 1709015402 |
| v. | ) | |
| | ) | |
| | ) | |
| RONDELL VEAL, | ) | |
| | ) | |
| Defendant. | ) | |

**Submitted: October 29, 2020**
**Decided: December 4, 2020**

**Upon Review of Defendant's Motion for**
**Reconsideration of Commissioner's Order-Affirmed**

Defendant seeks return of his cell phone following his conviction for second-degree murder. Defendant states he wants the phone returned because it holds pictures of his children. The State previously extracted photographs off the phone and gave the digital files to Defendant, but he maintains his request for the entire phone. Defendant filed a Motion for Return of Property, which was denied by a Superior Court Commissioner because the cell phone was used in the commission of Defendant's crime. Defendant now seeks review of the Commissioner's order.

## FACTUAL & PROCEDURAL BACKGROUND

1.      On September 22, 2017, the Newark Police Department was contacted by the family of Sherrie Campbell after she failed to pick up her son from daycare. When the police went to Campbell's residence, they found her deceased in her bed

1

with multiple stab wounds to her body. The police identified Campbell's romantic partner, Rondell Veal ("Defendant"), as a potential suspect and tracked him to a hospital in New York where he ultimately confessed to the murder.

2. Upon his arrest, the police confiscated Defendant's cell phone. On April 5, 2019, Defendant pleaded guilty but mentally ill to murder in the second degree and possession of a deadly weapon during the commission of a felony. On September 20, 2019, this Court sentenced Defendant to a total of thirty-three years of incarceration at Level V. On September 25, 2019, defense counsel asked the State to return Defendant's cell phone. Defendant said he wanted the cell phone for the photographs of his children that were on it. The State agreed the same day that it would return the cell phone. On October 21, 2019, however, the State reversed course and informed defense counsel that it would not return the cell phone because Defendant wanted to appeal the case. The State also told defense counsel there was a substance on the phone that could be blood. On November 5, 2019, defense counsel notified the State that Defendant did not want to appeal the case.

3. On July 14, 2020, Defendant filed through counsel a Motion for Return of Property. Sometime between July 14, 2020 and July 29, 2020, the State offered to extract the photographs on the phone for Defendant in lieu of returning the phone. Defendant remained insistent that he wanted the entire phone. On July 30, 2020, the State filed its Opposition to Defendant's Motion for Return of Property under

2

Delaware Superior Court Criminal Rule 42(e). On August 3, 2020, a hearing was conducted before a Commissioner of this Court. The Commissioner ordered that, pursuant to 11 *Del. C.* § 2311(a)(3), the phone would not be returned to Defendant.[1] The Commissioner ordered the State, however, to provide the requested photographs by September 15, 2020. On August 13, 2020, Defendant filed this Motion for Reconsideration of the Commissioner's Order ("Motion") under Delaware Superior Court Criminal Rule 62(a)(4)(ii).[2] On September 18, 2020, the State filed its Response in Opposition of Defendant's Motion. On October 29, 2020, upon the Court's request, the State filed a supplemental letter ("State's Letter") in support of its position.

## ANALYSIS

4. Delaware Criminal Rule 41(e) states that "a person aggrieved by the deprivation of property seized by the police may move the court for return of the property *on the ground that such a person is entitled to lawful possession of the property.*"[3] This Court can reconsider any hearing or pretrial matter only upon a

---

[1] 11 Del. C. 2311(a)(3) ("If the [seized] papers, articles or things were allegedly used in the commission of a crime, they shall be returned to the person from whom seized if such person is not thereafter duly convicted of the alleged crime; but if such person is duly convicted of the alleged crime, the papers, articles, and things shall be disposed of as the court directs[.]")

[2] Super. Ct. Crim. R. 62(a)(4(ii) ("Within 10 days after filing of the Commissioner's order…any party may serve and file written objections to the Commissioner's order which set forth with particularity the basis for the objections….").

[3] Super. Ct. Crim. R. 41(e) (emphasis added).

showing that the Commissioner's order is (i) based upon findings of fact that are clearly erroneous, or (ii) contrary to the law, or (iii) an abuse of discretion.[4]

**A. Defendant is not entitled to the return of his cell phone because it was used in the commission of a crime.**

5.      Under 11 *Del. C.* § 2311(a)(3), the Court has discretion to order the disposal of property that was used in commission of a crime for which the defendant was convicted:

> If the [seized] papers, articles or things were allegedly used in the commission of a crime, they shall be returned to the person from whom seized *if such person is not thereafter duly convicted* of the alleged crime; but if such person is duly convicted of the alleged crime, the papers, articles, and things shall be disposed of as the court directs[.]

Defendant was convicted of murder in the second degree; under Section 2311(a), if the cell phone was used in the commission of this murder, this Court will not order its return. Defendant contends the State has failed to establish that the cell phone was used in the commission of the crime. Although Defendant had his cell phone with him on the day of the murder, Defendant argues this is not sufficient to show that the cell phone actually was used to help commit the murder. The State, however, notes that the phone's contents were presented in sentencing and contained examples of how Defendant used his phone to cover up his crime. The State's Letter further

---

[4] Super. Ct. Civ. R. 62(a)(4)(iv).

details how the cell phone was used before and after the murder to facilitate the crime.

6.     The record supports the Commissioner's finding that the cell phone was used in the commission of the crime. The State's Letter enumerates several ways Defendant used his cell phone in the twenty-four hours following the murder to cover up his crime. First, Defendant texted his mother to arrange for the victim's father to pick up their son from daycare—something Sherrie usually did.[5] Second, Defendant used his cell phone to text Sherrie's manager the morning following the murder, pretending to be her and saying her car broke down, so that she would not be expected at work.[6] Defendant followed up later in the day, still pretending to be Sherrie, saying she would try to get online and work remotely.[7] The State alleges that, had Defendant not sent these texts, Sherrie would have been found sooner, possibly before Defendant fled to New York.[8]

7.     According to the State, the cell phone also serves as evidence of Defendant's guilt. Following the murder, Defendant left several goodbye messages to people he knew, referring to Sherrie in past tense. For example, Defendant texted his mother the following message regarding Sherrie: "She messed me up. I thought

---

[5] State's Letter at 3.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 4.

we were finally on track . . . . I should not have allowed myself to get pushed to this point."[9] Defendant also texted his ex-wife the morning after the murder, stating in part, "And PLEASE Understand U were Bad during Our time. Earned ur name Evil. She WAS WORSE Earned the name Demon."[10] The State contends it would have presented these texts as evidence of Defendant's identity and consciousness of guilt had the case gone to trial.[11]

8.    Finally, the State alleges the cell phone reveals Defendant's motive for the murder. Defendant used his cell phone to record his abusive conversations with Sherrie and supposedly later played these recordings to taunt her.[12] These recordings were presented to the Court during sentencing as evidence of Defendant's propensity for violence.[13] Defendant also texted Sherrie from his cell phone in the day leading up to the murder, arguing with her about whether she was cheating on him.[14]

9.    Based on the State's allegations, it is plausible that Defendant used his cell phone to abuse Sherrie before the murder, express his guilt following the crime, and cover up Sherrie's murder so he could flee before her body was discovered. The Commissioner therefore had a reasonable basis to hold that the cell phone was used in the commission of the murder for which Defendant was convicted. Defendant is

---

[9] *Id.* at 3.
[10] *Id.* at 2.
[11] *Id.* at 3.
[12] *Id.* at 1.
[13] Sent'g Tr. at 17.
[14] State's Letter at 2.

6

not entitled to the lawful possession of the cell phone, and the Commissioner therefore did not abuse her discretion in denying Defendant's Motion for Return of Property.[15]

10.  Defendant maintains the cell phone nevertheless must be returned because the State has not made a particularized showing that it has a continuing need for the phone, as required under 11 *Del. C.* § 2311(b). Defendant's argument has no merit because Section 2311(b) does not control in this case. 11 *Del. C.* § 2311(b) states that "[a]ny papers, articles or things validly seized may be retained by the police for a reasonable length of time for the purpose of apprehending the offender or using the papers, articles or things so seized as evidence in any criminal trial, or both." But, the cases where the Court has required the return of property under Section 2311(b) did not involve a convicted defendant.

11.  In *State v. Lloyd*, which Defendant cites for support, the State entered a *nolle prosequi* as to defendant but refused to return his seized property, alleging the items could be useful in the State's continuing investigation of the case.[16] The Court held that the State failed to offer a particularized showing of continued need for the items, and the State's continued possession of the items would be unreasonable.[17] In reaching this conclusion, however, the Court highlighted the distinction between

---

[15] *Doran v. State*, 1999 WL 1425006, at *2 (Del. Dec. 28, 1999).
[16] *State v. Lloyd*, 552 A.2d 498, 499 (Del. Super. 1988).
[17] *Id.* at 500.

Section 2311(b) and Section 2311(a): "[i]n § 2311(a)(3), Superior Court is specifically designated as having jurisdiction to order disposition of 'papers, articles or things' whose possession is 'unlawful.'" Further, the Court remarked that Section 2311(a)(3) has been interpreted as permitting forfeiture of property upon conviction.[18] By contrast, "where the defendant has not been 'duly convicted,' the 'papers, articles or things . . . shall be returned to the person from whom seized' . . . This is routinely done by the Court in cases where an acquittal results."[19] Unlike in *Lloyd*, Defendant was convicted of the crime for which he allegedly used his cell phone. Section 2311(b) therefore is inapplicable to this case, and the State was not required to show a continued need for the cell phone. Defendant does not have lawful possession of his cell phone, and the phone can be disposed at the Court's discretion under Section 2311(a)(3).

## B. State's Motion for Forfeiture

12.    At the end of its Response, the State briefly moves for formal forfeiture of the cell phone on the ground that it properly was seized.[20] The State alleges its motion is timely because it was filed within one year of Defendant's sentencing. If Defendant contends the State's forfeiture motion is untimely, it should notify the Court within twenty-eight days, and the Court then will order further briefing on the

---

[18] *Id.* at 499 (citing *State v. Rossitto*, 331 A.2d 385, 387 (Del. 1974)).
[19] *Id.* (quoting 11 Del. C. § 2311(a)(3)) (internal citations omitted).
[20] State's Resp. at 3.

matter. If the Defendant does not file his opposition within twenty-eight days, the State may file a proposed form of forfeiture order.

## CONCLUSION

For the reasons stated above, the Order of the Commissioner is **AFFIRMED.**

**IT IS SO ORDERED.**

Abigail M. LeGrow, Judge